*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* W. M. WEISER, Minor.

UNPUBLISHED
February 19, 2025
11:55 AM

No. 372048
Berrien Circuit Court
Family Division
LC No. 2024-000015-NA

Before: YATES, P.J., and LETICA and N. P. HOOD, JJ.

PER CURIAM.

Respondent-mother appeals of right the trial-court order terminating her parental rights to her minor child, WMW, under MCL 712A.19b(3)(i) (failure to rectify conditions that led to prior termination) and MCL 712A.19b(3)(j) (reasonable likelihood of harm if child returned to parent). On appeal, respondent-mother argues that the trial court violated her constitutional right to custody under the Fourteenth Amendment of the United States Constitution when it terminated her parental rights to WMW. We affirm.

## I. FACTUAL BACKGROUND

In 2021, respondent-mother gave birth to her second son, WPG, who tested positive at birth for morphine, codeine, amphetamine, and methamphetamine. Her son suffered from withdrawal symptoms from the substance exposure. The Department of Health and Human Services (DHHS) removed respondent-mother's two sons, and respondent-mother attended outpatient treatment, but she continued to test positive for illegal drugs. She was unable to maintain stable housing, she did not take her eldest son, RDT, to school regularly, she struggled with mental-health issues, and she lacked parenting skills, such as providing consistent feedings, maintaining hygiene, and homework completion. Additionally, respondent-mother failed to complete recommended services, including

-1-

counseling and intensive substance-abuse treatment, which resulted in termination of her parental rights to her two sons in 2023.[1]

The case before us opened in February 2024, after respondent-mother gave birth to another child, WMW, who tested positive for methamphetamine shortly after she was born. WMW was removed from the care of her parents,[2] and placed with a relative. Respondent-mother stated that she was homeless, had no transportation, and was unemployed. Respondent-mother agreed to take a drug test, and she admitted that she had used methamphetamine and heroin during her pregnancy with WMW.

Respondent-mother's case service plan recommended that she receive random drug testing, attend inpatient or outpatient substance-abuse counseling, successfully complete a parenting class, and establish and maintain safe housing. But respondent-mother missed several of her drug tests. On May 1, 2024, the trial court conducted a hearing, which included testimony from six witnesses. At the outset, the trial court observed that "this is set for trial and termination." Two doctors gave testimony about WMW's birth with controlled substances in her system and WMW's withdrawal symptoms after her birth. After the admission of a certified copy of the termination of respondent-mother's parental rights to her sons in 2023 as well as testimony about the reasons for termination and respondent-mother's lack of resources to care for WMW, the trial court completed the process of receiving evidence regarding adjudication and moved on to evidence supporting termination of parental rights. Witnesses testified about the prior case that ended in termination of respondent-mother's parental rights to her sons, respondent-mother's extensive history with illegal substances, and respondent-mother's parenting skills and deficiencies. Significantly, a foster-care worker told the trial court that there were substantial concerns about respondent-mother's substance abuse and lack of housing, so it would be in WMW's best interests to terminate respondent-mother's parental rights.

On July 10, 2024, the trial court conducted a hearing to render its decisions on adjudication and termination. After finding grounds to exercise jurisdiction over WMW, the trial court took up the request for termination of respondent-mother's parental rights. The trial court found, by clear and convincing evidence, under MCL 712A.19b(3)(i), that "the conditions relative to termination have been met as it relates to the respondent mother[,] specifically that an act of the parent resulted in injury, fetal in this situation as well, to the minor child." The trial court also found grounds for termination under MCL 712A.19b(3)(j). In support of its determination, the trial court pointed out that WPG's injury or abuse occurred "within less than a two and a half year period" of WMW's birth, that he tested positive for methamphetamine and amphetamine at his birth, that respondent-mother repeatedly tested positive for illegal drugs despite "extensive services offered" to her, that respondent-mother "acknowledged methamphetamine and heroin use contemporaneous with the

---

[1] This Court affirmed that termination of respondent-mother's parental rights to her two sons. See *In re Timmons/Gollon*, unpublished per curiam opinion of the Court of Appeals, issued March 14, 2024 (Docket No. 367659).

[2] WMW's father, EW, was listed as a respondent and pleaded no contest to the allegations in the same petition filed against respondent-mother. Because the trial court is continuing efforts toward reunification with respondent-father, he is not party to this appeal.

pregnancy and birth" of WMW, and that "this was nothing different from the prior case, opened for the same reasons, same basis for termination, sections i and j" of MCL 712A.19b(3). The trial court further explained that, for several reasons, termination of respondent-mother's parental rights was in WMW's best interests. Accordingly, the trial court terminated respondent-mother's rights to WMW, and respondent-mother thereafter appealed.

## II.  LEGAL ANALYSIS

Respondent-mother asserts that the trial court's termination of her parental rights violated the Fourteenth Amendment of the United States Constitution, but she does not clearly explain the nature of her constitutional argument beyond referring to due process. "Whether child protective proceedings complied with a parent's right to due process presents a question of constitutional law [that we] review de novo." *In re Ferranti*, 504 Mich 1, 14; 934 NW2d 610 (2019).

The Fourteenth Amendment provides a "right of parents to make decisions concerning the care, custody, and control of their children." *In re Sanders*, 495 Mich 394, 409; 852 NW2d 524 (2014). But a "parent's right to control the custody and care of her children is not absolute, as the state has a legitimate interest in protecting 'the moral, emotional, mental, and physical welfare of the minor[,]' " *id*. at 409-410 (citation omitted), so "in some circumstances 'neglectful parents may be separated from their children.' " *Id*. at 410 (citation omitted). For example, in a child protective proceeding under the juvenile code, MCL 712A.1 *et seq.*, the "adjudication divests the parent of her constitutional right to parent her child and gives the state that authority instead." *In re Ferranti*, 504 Mich at 16.

Here, respondent-mother offers no challenge to the trial court's adjudication, and any such challenge would be unavailing because that adjudication was sound as a matter of fact and law. Instead, respondent-mother faults the trial court for abridging her Fourteenth Amendment right to a "natural parent-child relationship" with WMW because "[a] situation justifying placement of a child in temporary custody of the probate court does not necessarily justify termination of parental rights." Respondent-mother's constitutional argument overlooks the trial court's proper exercise of jurisdiction over WMW through adjudication and the trial court's subsequent termination of her parental rights based on findings of statutory grounds that justify termination and a separate finding that termination was in WMW's best interests. To the extent respondent-mother relies on actions of the trial court to support her claim of a Fourteenth Amendment violation, we reject that position because the trial court's actions comported with all the constitutional standards prescribed by our Supreme Court. Thus, respondent-mother has identified no basis for relief because the trial court afforded respondent-mother every protection due under the Fourteenth Amendment in the course of terminating her parental rights to WMW.[3]

---

[3] Respondent-mother does not challenge the trial court's findings concerning the statutory grounds supporting termination, WMW's best interests, or the DHHS's reasonable efforts. Therefore, we may assume that the trial court did not clearly err in making those findings. See *In re JS & SM*, 231 Mich App 92, 98-99; 585 NW2d 326 (1999), overruled in part on other grounds by *In re Trejo*, 462 Mich 341, 353; 612 NW2d 407 (2000). Regardless, having reviewed the record, we conclude

Affirmed.

/s/ Christopher P. Yates
/s/ Anica Letica
/s/ Noah P. Hood

that the trial court did not err by finding that a statutory ground for termination was supported by clear and convincing evidence, see *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012), that a preponderance of the evidence established that termination was in WMW's best interests, see *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013), and that the DHHS made reasonable efforts to reunify respondent-mother and WMW before terminating respondent-mother's parental rights.  See *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012).